UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA RIOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COGNIZANT TEHNOLOGY SOLUTIONS U.S. CORPORATION,<br><br>　　　　　Defendant. | No. 2:25-cv-00251-DAD-CKD<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING THESE PROCEEDINGS PENDING ARBITRATION<br><br>(Doc. Nos. 7, 13) |

This matter is before the court on defendant's motion to compel arbitration. (Doc. Nos. 7, 13.)[1] On February 24, 2025, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 16.) For the reasons explained below, the court will grant defendant's motion to compel arbitration.

**BACKGROUND**

On December 18, 2024, plaintiff Gabriela Rios initiated a discrimination action against her former employer defendant Cognizant Technology Solutions U.S. Corporation in the Sacramento County Superior Court. (Doc. No. 1-1 at 5–8.) On January 21, 2025, defendant

---

[1] Defendant initially noticed its pending motion for hearing before the assigned magistrate judge (Doc. No. 7), before it was directed by minute order (Doc. No. 12) to properly re-notice its motion before the undersigned.

1

1    removed the action to this court pursuant to 28 U.S.C. §§ 1332(a) and 1441(b). (Doc. No. 1.) In
2    her operative complaint, plaintiff asserts claims under California Government Code §§ 12940, *et*
3    *seq.* for disability discrimination, failure to accommodate, failure to engage in the interactive
4    process, retaliation, failure to take all reasonable steps to prevent discrimination and harassment,
5    and wrongful termination. (Doc. No. 1-1 at 8–15.) Plaintiff also brings claims for intentional
6    infliction of emotional distress and unfair competition in violation of California Business and
7    Professions Code §§ 17200, *et seq*. (*Id.* at 15–17.)
8           On February 4, 2025, defendant filed the pending motion to compel arbitration,
9    contending that plaintiff entered into a valid arbitration agreement and that her claims fall
10   squarely within the scope of that agreement. (Doc. No. 13 at 4–8.) In this regard, defendant
11   claims that on April 5, 2023, plaintiff entered into a mutual arbitration agreement (the
12   "Agreement") with defendant as a condition of her employment, which stated that "any disputes,
13   claims, complaints, or controversies . . . including any [c]laims relating to breach of contract,
14   torts, wrongful discharge, discrimination, harassment, retaliation . . . will be resolved by
15   arbitration pursuant to the terms of this Agreement and NOT by a court or jury." (*Id*. at 4.) In
16   support of this contention, defendant has attached a declaration from Jessica Watts, defendant's
17   discovery counsel. (Doc. No. 13-2.) Watts attested that defendant maintains records of all
18   employment and related agreements, including arbitration agreements, and that she has access to
19   these records and is familiar with them. (*Id*. at ¶ 5.) Watts confirmed that on or around April 5,
20   2023, around the same time plaintiff accepted her position with defendant, she entered into the
21   Agreement as a condition of her employment. (*Id*.) Defendant also attached to the declaration
22   the Agreement bearing plaintiff's electronic signature. (Doc. No. 13-3 at 3.)
23          On February 18, 2025, plaintiff filed her opposition to defendant's motion, arguing only
24   that defendant has not proved that plaintiff signed the Agreement or that it was presented to her.
25   (Doc. No. 15 at 2–4.) Plaintiff did not submit any declaration in support of her opposition.
26          On February 25, 2025, defendant filed its reply. (Doc. No. 17.) Attached thereto was a
27   declaration from human resources ("HR") senior manager Kerstin Aukerman. (Doc. No. 17-1.)
28   In it, Aukerman details the steps that a new hire would have been required to complete in order to

1  submit their onboarding application. (*Id*. at ¶¶ 4–6.) She describes that a new hire would first
2  have to log in using the unique username and password that the new hire created during the
3  application process. (*Id*. at ¶ 4.) Once in the onboarding application, the new hire would click on
4  a link for "Pre-Joining Formalities," which leads to a list of individual links for documents to be
5  reviewed and signed. (*Id*. at ¶ 5.) To review each document, the new hire clicks the "Start Now"
6  button next to the document name, which opens a dialogue box with the relevant document. (*Id*.)
7  To sign the documents included in new hire paperwork, including the Agreement, the new hire
8  has to click a box next to an acknowledgment statement at the end of the document along with the
9  correct authentication key, which is populated in the system. (*Id*. at ¶ 6.) The authentication key
10 is an alphanumeric code sent to each new hire via email. (*Id*.) When the new hire checks the
11 acknowledgment box, the new hire's name and authentication key is automatically entered on the
12 document using information from their candidate profile. (*Id.*) The new hire then clicks
13 "Submit" to sign and receives a pop-up message that says "form signed successfully." (*Id.*)
14      Aukerman declares that she searched for plaintiff's employee profile in defendant's HR e-
15 storage website using her associate ID and obtained a copy of the Agreement, which plaintiff
16 electronically signed on April 5, 2023. (*Id*. at ¶¶ 8, 9.) Aukerman also declares that at the time
17 that plaintiff signed the Agreement, the above-described onboarding process was in place. (*Id*. at
18 ¶ 10.)

19                                         **LEGAL STANDARD**

20      A written provision in any contract evidencing a transaction involving commerce to settle
21 a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The
22 FAA confers on the parties involved the right to obtain an order directing that arbitration proceed
23 in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to
24 compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a
25 valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the
26 dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.
27 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance
28 of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt.,*

1  *Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565
2  (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).
3  "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."
4  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).  However, parties may rely upon
5  generally applicable contract defenses to invalidate an agreement to arbitrate.  *See id*. at 339.
6        There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi*
7  *Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985).  As such, "any doubts
8  concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626
9  (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).
10 However, the Supreme Court has clarified that "the FAA's 'policy favoring arbitration' does not
11 authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v.*
12 *Sundance, Inc.*, 596 U.S. 411, 418 (2022).  Rather, the presumption in favor of arbitration policy
13 "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding
14 refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as
15 other contracts." *Id.*  (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302
16 (2010)).

**DISCUSSION**

In its pending motion to compel arbitration, defendant argues that the FAA requires the court to enforce the Agreement because the parties entered into a valid, written agreement, which is binding and encompasses plaintiff's claims asserted in this action.  (Doc. No. 13.)  Plaintiff's only argument in response is that defendant has not established that plaintiff signed any agreement.  (Doc. No. 15 at 3.)  Specifically, plaintiff argues that defendant "presents what is purportedly an agreement electronically signed by Plaintiff," but "provides no evidence whatsoever that the agreement was even provided to Plaintiff," "no evidence at all regarding how the agreement was supposedly electronically signed," and "fails to address at all, how it can be shown that the electronic signature is Plaintiff's, and not a record created by somebody else."  (*Id.* at 2.)  In reply, defendant observes that plaintiff has not produced any evidence challenging the

/////

4

authenticity of the Agreement, and even if she had, defendant has presented sufficient evidence to establish that plaintiff signed it. (Doc. No. 17 at 4–6.)

As noted above, defendant bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citing *Knutson*, 771 F.3d at 565). "When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citing *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019)). "Under California law, '[t]he party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature.'" *Jean-Baptiste v. Cal. Coast Credit Union*, No. 23-cv-00533-LL-VET, 2024 WL 460241, at *2 (S.D. Cal. Feb. 6, 2024) (quoting *Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541, 543 (2021), *as modified* (May 21, 2021)). "If the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence—in this instance, by disputing the authenticity of their signatures." *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 755 (2023), *review denied* (Apr. 26, 2023). "To bear this burden, the arbitration opponent must offer admissible evidence creating a factual dispute as to the authenticity of their signatures." *Id.* Once "the validity of the signature is challenged, the [moving] party must 'establish by a preponderance of the evidence that the signature was authentic.'" *Jean-Baptiste*, 2024 WL 460241, at *2 (quoting *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016)); *see also Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014) (acknowledging that the "burden of authenticating an electronic signature is not great").

Here, defendant has met its initial burden to demonstrate the existence of an agreement to arbitrate by submitting the declaration of Jessica Watts (Doc. No. 13-2) and attaching a copy of the Agreement reflecting plaintiff's electronic signature (Doc. No. 13-3). *See Jean-Baptiste*, 2024 WL 460241, at *2 (finding that the "[d]efendant met its initial burden to show that a valid arbitration agreement exists by proffering a Member Services Request [] form with Plaintiff's apparent handwritten signature [] and a copy of Defendant's current Membership and Account

1   Agreement [] form which includes an arbitration provision"); *Brooks v. Greystar Real Est.*
2   *Partners, LLC*, No. 23-cv-01729-LL-VET, 2024 WL 3489205, at *4 (S.D. Cal. July 19, 2024)
3   ("In this case, Defendants met their initial burden to show that a valid arbitration agreement exists
4   by providing a copy of McGill's signed Lease with McGill's electronic signature."), *motion to*
5   *certify appeal denied*, No. 23-cv-01729-LL-VET, 2025 WL 958598 (S.D. Cal. Mar. 31, 2025);
6   *see also Cortez v. Cambridge Real Est. Servs., Inc.*, No. 22-cv-07332-HSG, 2023 WL 4534946, at
7   *3 (N.D. Cal. June 16, 2023) ("The party moving to compel arbitration may meet its initial
8   burden of proving that an agreement exists by attaching to the petition a copy of the arbitration
9   agreement purporting to bear the respondent's signature.") (internal quotations and citation
10  omitted). Therefore, the burden shifts to plaintiff to offer evidence creating a factual dispute as to
11  the Agreement's existence or the authenticity of her signature. *See Tercero v. Sacramento*
12  *Logistics LLC*, No. 2:24-cv-00953-DC-JDP, 2025 WL 43125, at *3 (E.D. Cal. Jan. 7, 2025)
13  (describing the burden-shifting framework).

14          As noted, plaintiff offers no such evidence in her opposition to the pending motion. In her
15  opposition plaintiff merely states that defendant has submitted insufficient evidence that she was
16  provided with and signed the Agreement. (Doc. No. 15 at 4.) Plaintiff does not, for example,
17  come forward with evidence that her login information, which was used to access defendant's HR
18  system, was shared with others, or that she was unable to access the system on the date that the
19  Agreement was purportedly signed, or any other evidence suggesting that she did not sign the
20  Agreement. In fact, plaintiff never even alleges that she did not sign the Agreement, nor does she
21  state that she has no memory of doing so. Accordingly, plaintiff has clearly not carried her
22  burden of challenging the authenticity of either her electronic signature or the Agreement itself.
23  *See Duval v. Costco Wholesale Corp.*, No. 22-cv-02338-TSH, 2023 WL 3852694, at *3 (N.D.
24  Cal. June 5, 2023) (finding no "sufficient dispute as to the authenticity of the signature" where the
25  plaintiff "does not actually state that she never signed the Agreement"); *Warren v. Del Taco*
26  *Rests., Inc.*, No. 18-cv-00082-JGB-SP, 2018 WL 6167937, at *4–5 (C.D. Cal. Apr. 23, 2018)
27  (finding that the "[p]laintiff has not raised a genuine issue of material fact as to whether a valid
28  arbitration agreement exists between the parties" where she "presents no evidence to dispute her

1  ability to access the People Matter system or sign the on-boarding documents other than her
2  general denial of doing so"); *Iyere*, 87 Cal. App. 5th at 756 (finding that the plaintiffs offered no
3  admissible evidence creating a dispute as to the authenticity of their signatures where they simply
4  declared that they did "not recall signing the agreement" and did not know how their signatures
5  were placed on the documents); *Bracamontes v. United Rentals, Inc.*, No. 2:23-cv-02697-DAD-
6  CSK, 2024 WL 1884052, at *4 (E.D. Cal. Apr. 30, 2024) (rejecting the "plaintiff's challenge to
7  the validity of the Arbitration Agreement" where the "plaintiff claims to believe that her digital
8  signature was forged" but "presents no evidence to support this claim").

9        Even if plaintiff's bare assertions were somehow sufficient to shift the burden back to
10 defendant, the declaration of Kerstin Aukerman, which details the unique credentials and the
11 steps required to complete an onboarding application in defendant's online HR system, is
12 sufficient to rebut any challenge by plaintiff as to authenticity. *See Warren*, 2018 WL 6167937,
13 at *4 (finding the declaration of the defendant's vice president describing how the plaintiff
14 accessed the HR system "using a unique login, and how that login is required to place an
15 electronic signature on a document establishes by a preponderance of the evidence that her
16 electronic signature was authentic"); *Bracamontes*, 2024 WL 1884052, at *4 ("[T]he audit of
17 plaintiff's account activity, the evidence of the steps taken by plaintiff in the online system
18 including placing her electronic signature and more, and defendant's explanation of the secure
19 credentials that plaintiff was required to use in order to log into the online system and place her
20 electronic signature at issue, taken together establish by a preponderance of the evidence that her
21 electronic signature was authentic.").

22       Accordingly, the court rejects plaintiff's challenge to the validity of the Agreement and
23 will grant defendant's motion to compel arbitration. *See Nanavati v. Adecco USA, Inc.*, 99 F.
24 Supp. 3d 1072, 1076 (N.D. Cal. 2015) (concluding that the defendant's declaration, which
25 established in detail the basis for concluding that the plaintiff electronically signed the agreement,
26 easily satisfied the defendant's "low burden to authenticate [the p]laintiff's electronic signature
27 and establish the existence of a valid arbitration agreement" where the plaintiff argued that the
28 /////

7

1  defendant had not met this burden but did not challenge the facts set forth in the defendant's
2  declaration).
3        Within its motion to compel arbitration, defendant requests that the court stay further
4  litigation of this case pending resolution of arbitration. (Doc. No. 13 at 10.) In her opposition,
5  plaintiff does not address defendant's stay request. (Doc. No. 15.) "When a district court finds
6  that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of
7  the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).
8  It is now clear that district courts do "not have discretion to dismiss the suit on the basis that all
9  the claims are subject to arbitration." *Id.* at 475–76; *see also Herrera v. Cathay Pac. Airways
10 Ltd.*, 104 F.4th 702, 710 (9th Cir. 2024) ("In its motion to compel arbitration filed prior to the
11 Supreme Court's decision in *Spizzirri*, [the defendant] requested that the court dismiss or, in the
12 alternative, stay the action pending arbitration. Since *Spizzirri* made clear that a district court
13 does not have discretion to dismiss the action when granting a motion to compel arbitration under
14 9 U.S.C. § 3, the court is compelled to grant [the defendant's] alternative request for a stay.").
15 Accordingly, the court will stay this action pending the completion of arbitration. *See Malik v.
16 Malik*, No. 2:23-cv-01344-CKD, 2024 WL 4216770, at *9 (E.D. Cal. Sept. 17, 2024) ("Under
17 *Spizzirri*, the court is compelled to stay the proceeding . . . .").

## CONCLUSION

19     For the reasons explained above:
20     1.    Defendant's motion to compel arbitration (Doc. Nos. 7, 13) is GRANTED and this
21         action and plaintiff's asserted claims are STAYED pending the completion of
22         arbitration;
23     2.    Plaintiff and defendant are required to notify the court that arbitration proceedings
24         have concluded within fourteen (14) days of the issuance of the arbitrator's
25         decision; and
26 /////
27 /////
28 /////

3. Because the action is now stayed pending the completion of arbitration, all currently calendared dates in this case are vacated.

IT IS SO ORDERED.

Dated: **June 13, 2025**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE